UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARINE DIESEL SPECIALISTS, INC.,
a Florida profit corporation,

       Plaintiff,

v.                                                          Case No:   2:17-cv-689-FtM-99MRM

M/Y "20 %," a Viking manufactured
motorized 64' pleasure yacht, her boats,
engines, tackle, equipment apparel,
furnishings, freights, appurtenances, and all
fixtures and other necessaries there unto
appertaining and belonging to the vessel, *in
rem*; and DAVID SIMPSON, an individual
*in personam*,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

     This cause is before the Undersigned following a show cause hearing held before the Undersigned on April 26, 2018, concerning whether the arrest of the M/Y 20% ("the Vessel") should be vacated.  (*See* Doc. 33; Doc. 34); *see also* Fed. R. Civ. P. Supp. Admiralty R. E(4)(f); M.D. Fla. R. 7.03(g).  Upon the filing a Motion to Show Cause Why Arrest of MV "20%" Should Not Be Vacated on March 6, 2018 and a Memorandum in Opposition filed on March 20, 2018, the Court entered an Order, setting an evidentiary show-cause hearing.  (*See* Doc. 22; Doc. 25; Doc. 26).  For the reasons set forth herein, the Undersigned recommends that the Court **DENY** the Motion to Show Cause Why Arrest of MV 20% Should not Be Vacated (Doc. 22).

I.      **Background**

On December 14, 2017, Plaintiff initiated this action by filing a Verified Complaint against the Vessel (Doc. 1) *in rem*, seeking a maritime lien against the Vessel for providing necessary services to the Vessel, including engine repairs for which the Vessel and its owner allegedly owe an outstanding balance of $13,907.37.  (*See generally* Doc. 1).  Plaintiff attached exhibits to the Verified Complaint, including a Repair Order/Agreement and a Service Report. (Doc. 1-1; Doc. 1-2).[1]  Plaintiff also filed a Verification by Peter W. Angel, the president of Plaintiff Marine Diesel Specialists, Inc.  (Doc. 2).

Plaintiff filed a Motion for an Order Directing the Clerk of Court to Issue the Warrant of Arrest *In Rem* (Doc. 7), a Motion for Appointment of Aquamarina Palm Harbour as Substitute Custodian (Doc. 8), and a Motion for Entry of Break Order (Doc. 12).  The Undersigned entered Orders granting the relief requested.  (*See* Doc. 13; Doc. 14; Doc. 15).  The Clerk of Court issued a Warrant for Arrest of the Vessel.  On February 21, 2018, David Simpson filed a Statement of Interest, indicating that he is the owner of the Vessel and as such has an interest in the outcome of the proceedings.  (Doc. 17 at 1).  On March 3, 2006, the Vessel filed an Answer and Affirmative Defenses (Doc. 21), and also filed the instant Verified Motion to Show Cause Why Arrest of MV "20%" Should Not Be Vacated (Doc. 22).

Thereafter, Plaintiff filed a Verified Amended Complaint on March 19, 2018.  (Doc. 23). The Amended Complaint added David Simpson, *in personam*, as a Defendant in this action. (Doc. 23 at 1).  In the Amended Complaint, Plaintiff alleges that Defendant David Simpson entered into a written agreement that he or his agent executed, requesting Plaintiff to provide

---

[1]  The Verified Complaint refers to an "Exhibit C," but no Exhibit C was attached to the Verified Complaint.  (Doc. 1 at 2 ¶ 5).

2

necessary services to the Vessel, including engine repairs.  (Doc. 23 at 2 ¶ 6).  Plaintiff further alleges that it rendered necessary services to the Vessel in a workmanlike manner at a reasonable cost.  (*Id.* at 2 ¶ 8).  Plaintiff claims that Defendants owe a balance of $11,369.66, and have failed to pay for these services.  (*Id.* at 2 ¶ 9).  Plaintiff further claims that based upon the Executed Agreement, David Simpson is obligated to pay the amount due under the Executed Agreement.  (*Id.* at 3 ¶ 10).  Plaintiff brings claims for:  Foreclosure of Maritime Necessaries Lien Against Defendant Vessel (Count I); Breach of Contract Against Defendant David Simpson (Count II); Unjust Enrichment Against Defendant David Simpson (Count III).  (*Id.* at 3-5).  On April 6, 2018, Defendants filed an Answer and Affirmative Defenses to the Amended Complaint.  (Doc. 28).

Additionally, Defendant David Simpson and third-party Chad Shannon filed Affidavits, denying that the signature on the Repair Order/Agreement for Repairs at issue is theirs.  (Doc. 29 at 1 ¶ 4; Doc. 32 at 1 ¶ 4).

## II.    Evidentiary Hearing

At the April 26, 2018 evidentiary hearing, Plaintiff presented the testimony of Pete Angel and introduced five (5) exhibits.  Defendants introduced four (4) exhibits.

### A.    Exhibits

The parties objected to each other's exhibits as the exhibits were introduced at the hearing.  The Court reserved ruling on certain objections concerning the admissibility of many of the exhibits.  The Court now makes the following rulings on the objections that were not resolved during the hearing:

| Party | Exhibit No. | Description | Ruling on Objection(s) | Admitted |
|---|---|---|---|---|
| Plaintiff | 2 | Repair Order/Agreement for Repairs – dated July 6, 2016, July 19, 2016, July 22, 2016, July 25, 2016, August 8, 2016 | Overruled | Yes |
| Plaintiff | 2-1 | Invoice for Repairs dated September 14, 2016 | Overruled | Yes |
| Plaintiff | 4 | Repair Order/Agreement for Repairs dated June 28, 2016 | Overruled | Yes[2] |
| Plaintiff | 4-1 | Repair Order/Agreement for Repairs dated April 10, 2017 | Sustained | No[3] |
| Plaintiff | 7 | Handwritten Note and copy of a Check | Overruled | Yes[4] |
| Defendants | 1 and 2 | Verified Complaint | No Objections | Yes |
| Defendants | 5 | Affidavit of David Simpson | Sustained | No[5] |

---

[2]  The Court admits the Repair Order dated June 26, 2018 as a business record for the repair of the Vessel.  Moreover, the Court finds the testimony of Mr. Angel sufficient to establish the authenticity of this document.  For purposes of this hearing, however, the Court makes no finding as to the customer's signature, only that repair order is signed by someone.

[3]  Plaintiff's counsel represented that Exhibit 4-1 was not an exact copy of the original. (Tr. at 30).  When the Court inquired if this document was "cobbled together from multiple copies," Plaintiff's counsel responded in the affirmative.  (*Id.*).  Thus, the Court sustains the Defendants' objections to authenticity.

[4]  The Court overruled Defendants' objections at the outset of the hearing and Defendants raised no further objections.  (*See id.* at 13-14).

[5]  When the Court inquired at the evidentiary hearing as to why Mr. Simpson and Mr. Shannon were not present to testify, Defendants' counsel stated the position "that the information that's relevant to the Court is the information the Court had at the time it issued the warrant, and

| Defendants | 6 | Affidavit of Chad Shannon | Sustained | No |

### B.      Testimony of Pete Angel

Plaintiff called Pete Angel as its only witness during the evidentiary hearing.  Mr. Angel testified that he is the president and owner of Marine Diesel Specialists, Inc. ("Marine Diesel"). (Tr. at 25).[6]  Marine Diesel repairs marine engines in yachts, sells marine engines, and sells parts.  (*Id.*).  When lightning struck the Vessel, Chad Shannon contacted Marine Diesel and asked Marine Diesel to look at the Vessel.  (*Id.* at 25-26).

Mr. Angel testified that Marine Diesel required Mr. Simpson or his agent to sign an agreement prior to working on the Vessel and Mr. Shannon, Mr. Simpson's captain, signed Marine Diesel's work order.  (*Id.* at 26, 39).  Mr. Angel identified composite Exhibit 4 as Marine Diesel's standard repair order for work on the Vessel.  (*Id.* at 31).  Mr. Angel testified that he created this document, it was his handwriting on the document, and he had knowledge of the terms of the agreement.  (*Id.* at 32-33).  The job description as reflected on the document was "sea trial, lightning strike."  (*Id.* at 33).  The original repair orders are carbon copies, one copy is

we don't believe that [the testimony of Mr. Simpson and/or Mr. Shannon is] necessary based on the facts in this case."  (Tr. at 6).  Nevertheless, Defendants argued that the affidavits of these witnesses marked as Defendants' Exhibits 5-6 are admissible just as they would be in the summary judgment context.  (*Id.* at 6-7).  The Court finds that the attempted submission of testimony from these witnesses by affidavit or declaration effectively deprived Plaintiff of the ability to cross-examine the witnesses at the evidentiary hearing.  Accordingly, the Court sustains Plaintiff's objections concerning the admissibility of these affidavits and will not consider them.  Alternatively, even if the Court were to consider the statements in the affidavits, they do not affect the decision reached herein because the issue of whether these individuals actually signed the documents in dispute need not be resolved at this early juncture.  That issue is more appropriately resolved following further discovery and either summary judgment proceedings or trial on the merits.

[6] "Tr." refers to the Transcript of the hearing filed on May 3, 2018.  (Doc. 34).

white, and one is yellow.  (*Id.* at 34).  Every repair order has the same verbiage on the reverse side of each page regarding warranties and disclosures.  (*Id.*).  Mr. Angel did not witness who signed the repair order for the customer here, but one of his employees, Javier Rodriguez, did witness the signature.  (*Id.*).  Mr. Angel required Mr. Simpson or his representative to sign the agreement prior to performing work.  (*Id.* at 36).  Mr. Angel testified that Marine Diesel performed work on the Vessel based on the terms of an agreement/work order signed by Mr. Simpson or his representative.  (*Id.*).  If Marine Diesel installs a defective part on a vessel, the owner of the vessel is responsible for the payment of the labor associated with remedying the repair.  (*Id.*).

Mr. Angel identified Time Sheets that correspond to the work performed on a vessel.  (*Id.* at 42; Plaintiff's Exhibit 2).  The mechanics fill in these time sheets for the hours worked on a vessel and provide a brief description of their work.  (Tr. at 43).  The time sheets represent all the services rendered to the Vessel.  (*Id.*).  Mr. Angel also identified an Invoice dated September 14, 2016, which represents the balance due for the repairs to the Vessel for the lightning strike.  (*Id.* at 44).  The balance due is $11,369.66.  (*Id.* at 45).  Marine Diesel would not have performed work on the Vessel without authorization from the owner.  (*Id.* at 46).

Mr. Angel received a handwritten letter from Mr. Simpson dated February 2, 2018 containing an offer to resolve this case and a copy of a check.  (*Id.* at 46-47).  In this handwritten letter, Mr. Simpson attempts to settle this matter for the amount of $1,434.81.  (*Id.* at 47, 50; Plaintiff's Exhibit 7).

During cross-examination, Mr. Angel testified that he had email exchanges with Mr. Simpson concerning offsets to Marine Diesel's bill.  (*Id.* at 49).  Mr. Simpson tendered payment

of $1,434.81 to Marine Diesel for the balance that Mr. Simpson believed he owed.  (*Id.* at 51).

Mr. Angel also received telephone calls from Chad Shannon.  (*Id.*).

## III.    Analysis

In the Motion, Defendants raise several issues:  (1) Defendants claim that the Verified

Complaint contains misleading information in order to obtain an arrest warrant; (2) Defendants

claim that the Plaintiff did not attach all of the purported Repair Orders and warranties

referenced in the Verified Complaint; (3) Plaintiff alleges that Defendants owe $13,907.37, but

the Invoice attached to the Verified Complaint indicates a balance due and owing of $11,369.66;

and (4) Plaintiff knew at the time of filing the Verified Complaint that Defendants dispute the

amounts due and owing, that Plaintiff installed defective parts, and that Plaintiff completed

defective work.  (*Id.* at 1-4).  In the Memorandum in Opposition, Plaintiff asserts that Defendants

do not raise any issue as to whether probable cause existed to arrest the Vessel.  (Doc. 25 at 2-3).

Plaintiff claims that Defendants filed the Motion to introduce disputed facts on the record that do

not relate to the issue of probable cause.  (*Id.*).  Plaintiff further claims that its Verified

Complaint and Amended Verified Complaint contain all of the necessary allegations to support a

finding of probable cause to issue an arrest warrant for the Vessel.  (*Id.* at 3).

The Constitution empowers federal courts to hear "all Cases of admiralty and maritime

jurisdiction" and Congress vested federal district courts with original and exclusive jurisdiction

over admiralty and maritime actions.  *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864,

868 (11th Cir. 2010) (citing U.S. Const. art. III § 2 c.2; 28 U.S.C. § 1331(1)).  "An in rem

admiralty proceeding requires as its basis a maritime lien" and a federal court obtains *in rem*

jurisdiction over a vessel when the maritime lien attaches to the vessel.  *Crimson Yachts*, 603

F.3d at 868.  The Federal Maritime Lien Act, 46 U.S.C. §§ 31341-31343 grants maritime liens to

"a person providing necessaries to a vessel" and allows such individual to bring a civil action *in rem* to enforce the lien. 46 U.S.C. § 31342(a). As such, one purpose of maritime liens is to protect those furnishing repairs to vessels. *Crimson Yachts*, 603 F.3d at 870.

After an arrest of a vessel, a party claiming a right to the vessel may request the court to conduct a prompt hearing to vacate the arrest. Fed. R. Civ. P. Supp. Admiralty R. E(4)(f); M.D. Fla. R. 7.03(g). At the hearing, "the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. Admiralty R. E(4)(f). The purpose of the hearing is to afford due process to a boat owner whose vessel has been arrested without the benefit of a post-arrest hearing. *S & S Diesel Marine Servs., Inc. v. M/V F-TROOP*, No. 11-60020-CIV, 2011 WL 1899402, at *8 (S.D. Fla. May 18, 2011) (citing *Linea Naviera De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, No. 99-471-CIV-J-10C, 1999 WL 33218589, at *2 (M.D. Fla. Nov. 17, 1999)).

To be clear, "[t]he post-arrest hearing is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant, and if so, to fix an appropriate bond." *Id.* (citing *20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1423, 1427 (M.D. Fla. 1997)). Plaintiff has the burden under Supplemental Rule E(4)(f) to present sufficient evidence to show that there were reasonable grounds or probable cause for the arrest of the vessel. *American Overseas Marine Co., LLC v. M/V Seattle*, No. 3:16-CV-1435-J-25JRK, 2016 WL 8607581, at *3 (M.D. Fla. Dec. 20, 2016) (citing *20th Century Fox Film Corp.*, 992 F. Supp. at 1427). This burden is not onerous. *S & S Diesel Marine Servs., Inc.*, 2011 WL 1899402, at *8. Plaintiff must show by a preponderance of the evidence that it is entitled to a valid maritime lien. *Id.*

To this end, to establish a maritime lien on a vessel pursuant to 46 U.S.C. § 31342, a plaintiff must prove: "(1) it provided 'necessaries' (2) at a reasonable price (3) to the vessel (4) at the direction of the vessel's owner or agent." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005) (citation omitted).  In determining whether a plaintiff meets its burden, a court may consider evidence at the post-arrest hearing that was not before it at the time of the original issuance of the warrant for arrest "in order to determine whether reasonable grounds existed for the arrest of the vessel." *S & S Diesel Marine Servs., Inc.*, 2011 WL 1899402, at *9.  The reason to allow additional evidence stems from the fact that at the time of the arrest, a court must quickly determine whether probable cause exists for the arrest of the vessel.  *Id.*  At the pre-judgment arrest stage, a plaintiff must show each element by a preponderance of the evidence, meaning that a plaintiff need only produce enough evidence to convince the court that reasonable grounds existed to stop the vessel.  *Id.*  By contrast, at the post-judgment hearing, both parties can present additional evidence that allows a court to review a more complete record in order to decide whether the arrest should continue or be vacated.  *Id.*

In this case, of the four elements Plaintiff must prove – namely, it provided necessaries, at a reasonable price, to the Vessel, at the direction of the Vessel's owner – two are largely uncontested and two are contested.  Beginning with the uncontested elements, Mr. Angel testified and the exhibits showed that Plaintiff provided necessaries in the form of repairs for a lightning strike and provided these necessaries to the Vessel.  (*See* Plaintiff's Exhibits 2, 2-1, 4; Tr. at 25-26, 33, 44, 53).  Thus, the Court finds that Plaintiff proved by a preponderance of the evidence these two elements.

The Court turns to the two contested elements, namely: (1) whether the repairs were of a reasonable price; and (2) whether the repairs were done at the direction of the Vessel's owner or agent.

### A.      Whether Plaintiff Provided the Repairs at a Reasonable Price

Defendants argue that Plaintiff did not allege in the original Verified Complaint that the costs of its services were reasonable. (Tr. at 22). At the hearing, Mr. Angel testified that he did not find in the original Verified Complaint any allegation that the cost of services provided to the Vessel was reasonable. (*Id.* at 56). Plaintiff's counsel argued that there "is nothing in the federal statute that requires reasonableness of the fees charged to be included to create a necessaries lien, and . . . it's absolutely undisputed that there was money owed after the case was filed, even after the order was issued." Tr. at 62). Although a federal statute may not require this element, the Eleventh Circuit does. *See Sweet Pea Marine, Ltd.*, 411 F.3d at 1249.

In maritime cases, the reasonableness of the charges is measured by whether the charges are customary. *Sweet Pea Marine, Ltd.*, 411 F.3d at 1249. The term "customary" means that the charges are "in accord" with the prevailing charges for work done. *Id.* To satisfy this element at trial, a plaintiff must present "some modicum of evidence which compares the charges claimed with what other competitors would have charged for similar work or materials." *Id.* Witness testimony may satisfy this burden that the charges were reasonable in accord with industry standards. *Id.*

In the Verified Amended Complaint, Plaintiff states that it "rendered the aforementioned services in a workmanlike manner, and the cost of the services [was] reasonable." (Doc. 23 at 2 ¶ 8). Mr. Angel verified the Amended Verified Complaint by stating that the contents are true to the best of his knowledge and all of the information as to the matters in the Amended Verified

Complaint is from his personal knowledge, reports made to him by employees of Plaintiff, and by a review of business records concerning the Vessel.  (Doc. 23-4 at 1-2 ¶¶ 2, 4).  Mr. Angel testified that the $11,369.66 was the balance due on the invoice, but the invoice does not specify if it was related to the allegedly defective ZF transmission part or the labor to install it.  (Tr. at 53).

At this stage of the proceedings, the Court finds Plaintiff's allegations in its Verified Amended Complaint that the cost of services was reasonable to be sufficient for Plaintiff to meet its burden.  *See George v. A 2005 DONZI Motor Yacht, Hull Identification No. DNAFA008A505*, No. 09-81145-CIV-VITUNAC, 2009 WL 3417707, at *2 (S.D. Fla. Oct. 22, 2009) (finding allegations in the verified complaint that plaintiff has title to the vessel sufficient even though dubious exhibits were submitted to corroborate his title).  Defendants' arguments focused on the fact that the original Verified Complaint did not contain a comparable allegation.  Nevertheless, the Court finds that Plaintiff remedied this omission in its Verified Amended Complaint and, in addition, the Court is permitted to consider this additional evidence.  *See S & S Diesel Marine Servs., Inc.*, 2011 WL 1899402, at *9; (*Compare* Doc. 1, *with* Doc. 23 at 2 ¶ 8).

Moreover, the Court is not obligated to conduct a mini-trial at this stage of the proceedings in order to determine whether the arrest of the Vessel should be vacated.  *See Am. Overseas Marine Co., LLC v. M/V Seattle*, No. 3:16-CV-1435-J-25JRK, 2016 WL 8607581, at *3 (M.D. Fla. Dec. 20, 2016).  Accordingly, the Court finds that Plaintiff established by a preponderance of the evidence the reasonableness of the costs of repairs as compared to what other competitors in the industry would charge.

**B.      Whether the Repairs Were Done at the Direction of the Vessel's Owner or Agent**

Defendants argue that David Simpson and/or his agent did not sign any of the repair orders attached to the Verified Complaint.  (Doc. 22 at 2).  Defendants do not appear to argue that repairs were not done at Mr. Simpson's or his agent's direction.  Although it is undisputed that Plaintiff did not attach the signed repair orders to the original Verified Complaint, Plaintiff corrected this error by attaching what Plaintiff purports to be Mr. Shannon's signatures to the Verified Amended Complaint.  (*Compare* Doc. 1-1 at 1-7 *with* Doc. 23-1 at 2; Plaintiff's Exhibit 4).

In addition, Mr. Angel testified that Plaintiff required Mr. Simpson or his agent to sign an agreement prior to working on the Vessel and Mr. Angel believed he had a repair order signed by Mr. Shannon.  (Tr. at 26, 36).  Further, Mr. Angel testified that Plaintiff performed all work on the Vessel based on the terms of the agreement or work order signed by Mr. Simpson or his representative.  (*Id.* at 36).  Importantly, Mr. Angel also testified that Plaintiff would not have performed repairs on the Vessel without the authorization of the owner.  (*Id.* at 46).

Further, it is seemingly incredible that Mr. Simpson would argue that he did not authorize the repairs at issue when the record evidence demonstrates that (1) Mr. Simpson paid $85,000 toward the Plaintiff's Invoice (Plaintiff's Exhibit 2-1 at 2) and (2) Mr. Simpson attempted to tender partial payment to Plaintiff for the outstanding balance.  (*See* Plaintiff's Exhibit 7; Tr. at 51-52).  The Court finds for the purposes of this post-arrest proceeding, Plaintiff has shown by a preponderance of the evidence that repairs to the Vessel were at the direction of the owner or the owner's agent.

## IV.   Conclusion

Accordingly, the Undersigned finds that for the foregoing reasons, Plaintiff established by a preponderance of the evidence that Plaintiff provided necessaries, at a reasonable price, to the Vessel, at the direction of the Vessel's owner or agent and, thus, reasonable grounds existed for the arrest of the Vessel.

**IT IS RESPECTFULLY RECOMMENDED:**

To the extent that the Motion to Show Cause Why Arrest of MV 20% Should not be Vacated (Doc. 22) seeks for the Court to vacate the arrest of Defendant Vessel, the Motion be **DENIED.**

Respectfully recommended in Chambers in Ft. Myers, Florida on May 24, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
Counsel of Record
Unrepresented Parties